21 N.J. Super. 419 (1952)
91 A.2d 342
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID SOLOMON MOORE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered September 8, 1952.
Decided September 18, 1952.
*421 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. H. Russell Morss, Jr., for plaintiff-respondent (Mr. Edward Cohn, attorney).
Mr. David Solomon Moore, pro se.
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The defendant was indicted for murder and, on a plea of non vult, was, on February 9, 1948, sentenced by the Union County Court to serve a term in State Prison of not less than ten years nor more than ten years. On the defendant's application, the Mercer County Court denied his application for a writ of habeas corpus to review the sentence upon the ground that it was illegal. The defendant thereupon filed this appeal. A prior application for the correction of the alleged illegal sentence was similarly denied on the ground that it was not reviewable under habeas corpus proceedings. It is quite clear from defendant's second application, now under review, that he misconceived the appropriate procedure to effect a correction of the sentence. Under the circumstances, we think it may be helpful if we consider the meritorious question.
R.S. 2:138-3 (now R.S. 2A:113-3), provides that if a plea of non vult or nolo contendere be accepted in a case of indictment for murder, the sentence to be imposed shall be *422 either imprisonment at hard labor for life or the same as that imposed upon a conviction of murder in the second degree. R.S. 2:138-4 (now R.S. 2A:113-4), provides that "* * * Every person convicted of murder in the second degree shall suffer imprisonment at hard labor not exceeding thirty years." R.S. 2:192-4 (now R.S. 2A:164-17), in effect at the time of the imposition of sentence, provides, inter alia:
"All sentences to the New Jersey state prison shall, on and after May twenty-sixth, one thousand nine hundred and thirty-two, be for a maximum and minimum term, except sentences for life. The maximum term shall not be in excess of the maximum term prescribed by law for the offense for which the offender was convicted. The minimum term shall not be less than one year. Commutation time for good behavior, as provided by law shall be allowed on both the maximum and minimum terms. Nothing contained in this section shall be construed to repeal or affect the power of the courts to suspend the imposition or execution of sentence and place the offender on probation."
In New Jersey there exists a distinct separation of the power to impose sentence of detainment as a correctional measure for wrongs committed under our administration of criminal justice, wherein that power is vested in the judicial branch of the government of this State, and the authority and power to parole one so detained after consideration of credits provided for in the statutes, with such power being delegated to an executive board presently known as the State Parole Board. In the case of Ex parte Fitzpatrick, 9 N.J. Super. 511 (Cty. Ct. 1950), at pp. 519, 520; (affirmed 14 N.J. Super. 213, App. Div. 1951), the separation of power is recognized, to wit:
"Under the 1844 Constitution, in effect at the time of imposition of petitioner's sentences, and under the present Constitution, distribution of the powers of our State Government has placed the functions of pardon and parole in the executive branch (Const. 1844, Art. V, par. 10; Const. 1947, Art. V, sec. 2, pars. 1, 2; R.S. 2:198-1 et seq.; R.S. 30:4-106.1 et seq.; P.L. 1948, c. 84, etc.).
Traditionally, the granting of outright remission of guilt and the effects thereof, i.e., pardon, is the voluntary act of the sovereign, *423 and, thus, an executive function. The concept of parole is more modern and the distinctions between it and pardon are well defined. Pardon is a remission of guilt and a declaration of record by the authorized authority that a particular individual is to be relieved of the legal consequence of a particular crime. Territory v. Richardson, 9 Okl. 579, 60 Pac. 244, 49 L.R.A. 440 (Sup. Ct. 1900). Parole, on the other hand, is born of a broad statutory scheme, which, in the discretion of the paroling authority, permits the conditional release of an offender from a penal or correctional institution after he has served a portion of his sentence, under the continued supervision of the State and under conditions that permit his reincarceration in the event of misbehavior. Properly conceived, parole contains none of the elements of executive clemency, as in the case of pardon. The basic purpose of parole is, or should be, to bridge the gap between the closely ordered life within the prison walls and the freedom of normal community living. The concept of parole recognized in our present Constitution is effectuated by statute. Previously, the power to parole, inter alia, was lodged in the old Court of Pardons (R.S. 2:10-1 et seq.; R.S. 2:198-1 et seq.), and also, in the case of State Prison inmates, in the board of managers of such institution (R.S. 30:4-106.1 et seq.). Presently, the function of parole, in the case of State Prison inmates, is in the State Parole Board (R.S. 30:4-123.1 et seq.). Such former custodians of the power of granting parole had exercised it, and the State Parole Board presently functions, within the framework of the executive branch of the government."
Imposing minimum and maximum terms of sentence identically alike operates as a restriction against the exercise of powers of parole delegated exclusively to the State Parole Board. It withdraws from that Board the consideration and the discretionary authority to determine that the prisoner has rehabilitated himself and is worthy of return to normal association with society and in the event of misbehavior to reincarcerate him. It is tantamount to a direction that at the expiration of the minimum sentence the prisoner must be released regardless of his state of rehabilitation, a direction which is not only akin to an encroachment upon the authority of the State Parole Board to determine such questions, but also contrary to the modern conception that the major purpose of the imposition of a punishment for criminal wrongs is reformation, rather than the old and now discredited theory of atonement. In New Jersey, we *424 think it may be justifiably stated that we presently adhere to the general policy that, while for the protection of society it is necessary to deprive the offender against society of his liberty for a greater or less period of time, yet such deprivation should be conducted as humanely as possible, and with the view of restoring him as a useful citizen to society, if that result is possible of realization.
Only the Legislature may ordain the punishment for crime and the sentencing court may not impose a sentence inconsistent therewith. State v. Dugan, 84 N.J.L. 603 (Sup. Ct. 1913); affirmed 85 N.J.L. 730 (E. & A. 1914). The statutory language employed by the pertinent provision mandatorily directs the sentencing court to impose a "maximum and minimum term, except sentences for life" in all sentences to the New Jersey State Prison. The words "minimum" and "maximum" have separate and distinctly opposing meaning. This clearly appears from their definitions set forth in Webster's New International Dictionary (2d ed., Unabridged) where the word "minimum" is defined as: "The least quantity or amount assignable, admissible, possible, etc., in a given case;  opposed to maximum," and "maximum" is defined as: "The greatest quantity or value attainable in a given case; or, the greatest value attained by a quantity which first increases and then begins to decrease; the highest point or degree; the time or period of highest number, greatest brightness, etc.;  opposed to minimum." In 24 C.J.S., Criminal Law, sec. 1582, p. 111, it is stated: "* * * Under an indeterminate sentence law, the court cannot fix the minimum and maximum term of imprisonment to expire at the same time." Citing Sanders v. State, 19 Ala. App. 367, 97 So. Rep. 294 (1923) and Ex parte Collins, 51 Mont. 215, 152 Pac. 40 (1915). In the Collins case, dealing with a statute which prescribed that "* * * both the minimum and the maximum time shall be named in such judgment, and such minimum time shall not be less than the minimum time named in law prescribing punishment for such crime or offense nor shall the maximum *425 time named in such judgment exceed the maximum punishment named in such law; * * *," Mr. Chief Justice Brantly, speaking for the court, stated:
"* * * Prior to the enactment of this statute the provisions of the Revised Codes imposing imprisonment in the state prison as punishment for felonies prescribed the extent of the term of service in each case, with reference to some fixing a term not to exceed a certain maximum number of years, and with reference to others providing that the imprisonment should not be less than a minimum nor greater than a maximum number of years, and requiring the court or the jury, according as the one or the other assessed the punishment, to designate a definite term below the maximum, if a maximum only were designated, or between the minimum and maximum number of years designated. Sections 8635 and 8572 of the Revised Codes are illustrative examples. With some exceptions, all convicts were, at the discretion of the Governor and state board of pardons, entitled to be paroled  those serving time sentences, at the expiration of one-half of the term, or, in cases of long terms, at the expiration of 12 1/2 years; and those serving life sentences, at the expiration of 25 years. (Rev. Codes, sec. 9573). The purpose of the new enactment was to so change the rule relating to sentences as to require the court or jury to impose indeterminate sentences in all cases other than those arising out of crimes expressly excepted in section 1, supra, and to lodge in the Governor and board of prison commissioners a discretionary power to grant paroles in all cases in which such sentences have been imposed  i.e., in all cases other than those excepted  at the expiration of the minimum term fixed. The effect of it is, apparently, to amend all the provisions of the Codes relating to terms of imprisonment so far as they are inconsistent with its provisions, and also the provisions relating to the time at which paroles may be granted; for it expressly takes from courts and juries the power to fix definite terms of imprisonment, and enjoins the imposition of indeterminate sentences instead thereof. It also greatly enlarges the discretion of the Governor and the board of prison commissioners with reference to paroles. Evidently the end sought to be attained was to devise a method of treatment of convicts which would encourage in them a disposition to reform, by holding out to them the hope of securing, by reason of exemplary conduct during the minimum term of service, release under the restraints of a parole from actual confinement at profitless labor, and the enjoyment of comparative freedom to pursue some profitable vocation yielding a support to themselves and families, when they have families, and incidentally to regain their standing as useful citizens in the community. There is also held out the hope that by continued good behavior restoration of all civil rights by an absolute pardon will speedily be obtained. Evidently, too, the conception of the Legislature, as indicated by the use of the term `indeterminate,' was that the minimum and maximum *426 terms fixed should be so adjusted as to allow a substantial period of time to intervene during which the application for parole might be made, and the Governor and board of prison commissioners might determine its merits by inquiry touching the conduct of the applicant, in order to ascertain whether or not he has exhibited a disposition to reform, and hence is entitled to invoke the discretionary power lodged in them. This being manifestly the end sought to be accomplished, it is mandatory upon the courts to enforce the statute in every case, according to its spirit. It is not to the purpose to say that the provision does not prohibit the fixing of the minimum and maximum so that both will expire on the same date, because they may, in the nature of things, approach each other until the difference disappears. This view is not in accord with the spirit of the provision, and would defeat effectually the purpose had in view by the Legislature. It is entirely clear that the jury in returning the verdict in question here, and the court in pronouncing the judgment, ignored the spirit and purpose of the provision, with the result that the term of service imposed upon the complainant is as definite as if the jury had said, `We, the jury, find the defendant guilty,' etc., and fix his punishment at confinement in the state prison for a term of two years."
In the Sanders case [19 Ala. App. 367, 97 So. 295] the Court of Appeals of Alabama held:
"The sentence imposed by the court upon the defendant was for a term of `not less than 24 months nor more than 24 months,' in the penitentiary. The sentence is for a definite and fixed time, and not indeterminate, as required by the act of 1919, supra. A sentence making the minimum and the maximum limit the same does not comply with the law."
We think that in the determination of this issue, it may be helpful to consider the history of the punishment provided for the commission of criminal wrongs and the legislation in New Jersey with respect thereto. The common law punished treason and felony with death, corruption of blood, loss of dower and forfeiture of lands, goods and chattels and, on conviction of misdemeanor, the punishment was that of fine and imprisonment, in the discretion of the court. O'Regan and Schlosser, Criminal Laws of New Jersey, p. 128, sec. 113. In 1898, the Legislature adopted "An Act for the punishment of crimes (Revision of 1898)," L. 1898, c. 235, p. 794, and by sec. 217, provided that the penalty of *427 one convicted of a high misdemeanor "shall be punished by a fine of not exceeding two thousand dollars, or by imprisonment, with or without hard labor, as the court may direct, for any term not exceeding seven years, or both," and by sec. 218, one convicted of a misdemeanor, the imposition of a fine not exceeding $1,000, or by imprisonment, with or without hard labor, as the court may direct, for any term not exceeding three years, or both. In 1911 (L. 1911, c. 191, p. 356), the 1898 act (L. 1898, c. 237, p. 866), was amended to provide that a sentence to State Prison shall set forth a maximum term which shall be equal to the limit of imprisonment as provided in the 1898 act, its supplements or amendments, for the crime for which the prisoner was sentenced and likewise set forth a minimum term of not less than one year and not more than one-half of such maximum term. In 1914 (L. 1914, c. 214, p. 429), the Legislature enacted a further supplement providing for a maximum term equal to the limit of imprisonment as provided in the 1898 act, its supplements or amendments, for the crime for which the prisoner was sentenced, and a minimum term of not less than one year and not more than two-thirds of such maximum term. Chapter 50 of the Laws of 1922, amended chapter 237 of the Laws of 1898, to provide that:
"Every such sentence to confinement in the State Prison shall set forth a maximum term which shall be within or equal to the limit of imprisonment as provided in `An act for the punishment of crimes (Revision of 1898),' its supplements and amendments, for the crime for which the prisoner was sentenced; such sentence shall likewise set forth a minimum term, which shall not be less than one year and not more than two-thirds of such maximum term."
Chapter 166 of the Laws of 1932 (R.S. 2:192-4), further amended chapter 237 of the Laws of 1898, to provide that: "All sentences to the New Jersey State Prison, shall hereafter be for a maximum and minimum term, except sentences for life * * *." It is further provided in that enactment that "The board of managers of the New Jersey State Prison are hereby authorized to release upon parole, under *428 rules and regulations, to be prescribed by the State Board of Control of Institutions and Agencies, upon the expiration of the minimum term to which the prisoner is sentenced, any prisoner who, in their judgment, is deemed worthy to be at large. The period of such parole to be measured by the maximum term provided by law for the offense for which the prisoner is sentenced." Subsequent statutory enactments have not substantially altered this provision. See R.S. 2:192-4, as amended, L. 1951, c. 99, p. 503, sec. 1 (now N.J.S. 2A:164-17); R.S. 30:4-106.1, L. 1948, c. 84, sec. 5, et seq. It will thus be observed that the Legislature has made no substantial change in the provision for a maximum and minimum term imposed on one sentenced to State Prison nor in the supervisory powers of the parole authorities since the enactment of L. 1932, supra.
Through the evolutionary changes in our system of administration of criminal justice the power and duty of determining questions of parole devolved upon the State Parole Board. This evolutionary development bespeaks an intent that the determination of questions of parole and the supervision of parolees were vested in the State Parole Board, distinct and separate from the judiciary. If such a sentence as here imposed were permitted, it would quite conceivably tend to thwart the legislative intendment of the parole system and remove the prisoner from the supervision of the Parole Board during that time which he is released upon parole and under surveillance until the expiration of time equivalent to the maximum prison term. In effect, it would shorten that period of supervision by the Board in those cases where a prisoner is released by commutation of sentence and completely eliminate that supervision in cases where no commutation is earned and directs the prisoner's discharge at the expiration of the minimum term. Whatever powers of persuasion toward rehabilitation of the prisoner the Board may have during the period of parole would be seriously reduced or entirely eliminated and the benefits thereof lost to the prisoner and to society. This, we feel, is contrary to *429 the very nature and intent of the parole system and its design and purpose.
In its brief, the State asserts: "The purpose of a minimum term is to set the earliest day for parole, see Ex parte Fitzpatrick, 9 N.J. Super. 511; and in this case now under consideration, the judge felt that there should be no minimum." This sentence we find to be in direct conflict with the express words of the statute, R.S. 2:192-4 (now R.S. 2A:164-17).
However, as stated in the case of In re Kershner, 9 N.J. 471 (1952), the defendant's attack upon his sentence as illegal under R.S. 2:192-4,
"because the minimum and maximum of each are identical is not in any event to be heard upon habeas corpus. If he prevailed he would not be entitled to immediate release but only to be re-sentenced. In addition, the writ will not ordinarily issue when other adequate relief to correct error is available to the applicant. Cf. In re Davis, 107 N.J. Eq. 160, 170 (Ch. 1930). And Rule 2:7-13 provides that an illegal sentence may be corrected at any time by the sentencing court. See State v. Payne, supra; State v. Johnson, 16 N.J. Super. 174 (App. Div. 1951)."
In view of the fact that an application to correct an illegal sentence is not reviewable by habeas corpus, the judgment of the lower court denying the issuance of a writ of habeas corpus is affirmed. If the defendant desires to undertake further proceedings to accomplish a correction of the erroneous sentence, he must apply to the sentencing court.